# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:18-CR-1-TLS |
| | ) | |
| SHAWN BACON | ) | |

## OPINION AND ORDER

The Defendant, Shawn Bacon, is charged in a ten-count Indictment with numerous drug and firearms-related offenses for conduct occurring between November and December 2017. This matter is before the Court on a Motion to Suppress [ECF No. 29], filed by the Defendant on May 10, 2018. The Defendant seeks to suppress all evidence confiscated during the December 20, 2017, search of his residence on High Street in Fort Wayne, Indiana. The home was searched pursuant to a search warrant, but the Defendant maintains that the warrant should not have been issued because the supporting affidavit was insufficient on its face to establish probable cause to believe that the evidence sought would be found at the residence.

The Government maintains that a practical, common sense reading of the affidavit established probable cause to issue the search warrant for the High Street residence. Alternatively, if the Court reaches a different conclusion regarding the existence of probable cause, the Government submits that the fruits of the search would be admissible because the officers acted in good faith in executing the search warrant.

## SEARCH WARRANT AFFIDAVIT

On December 20, 2017, officers from the Fort Wayne Police Department (FWPD) obtained a warrant to search a residence located at a particular address on High Street in Fort

Wayne, Indiana. FWPD Detective Craig Wise completed the Search Warrant Affidavit. In support of his assertions that there was probable cause to believe that the residence would contain evidence of drug activity, Detective Wise described two tips provided to Fort Wayne Vice and Narcotics.

The first tip, received on November 2, 2017, was that Shawn Bacon, who lived at the particular residence on High Street, had been arrested for selling cocaine from his residence in the past, and had twice before almost caused the tipster's brother to die by overdose by supplying him with heroin. The caller described the two vehicles Bacon used to deliver narcotics: a Silver Chevrolet Impala and a Black Chevrolet Impala. Detective Wise stated that he confirmed throughout his investigation that Shawn Bacon entered and exited the reported address and drove the described vehicles. A records check of the license plate on the Silver Impala returned as belonging to a person named Shawn Bacon who lived at the High Street address.

Detective Wise stated that the second tip, received on November 13, 2017, was that Shawn Bacon, who resided at the High Street address in the upstairs apartment, was selling large amounts of heroin, cocaine, and methamphetamine to his addict friends. The tipster stated that Bacon was a convicted felon, and had multiple guns throughout the residence.

Next, Detective Wise provided information on the two controlled buys he supervised to corroborate that the Defendant was engaged in illegal drug trafficking from the High Street residence. Detective Wise stated that he met with a confidential informant, identified in the affidavit as CI 2196, on November 16, 2017. Detective Wise indicated that he had independently verified CI 2196's credibility and reliability in the current investigation, as well as during the

course of other ongoing investigations. CI 2196 told Detective Wise that an acquaintance[1] of CI 2196 could purchase heroin, cocaine, methamphetamine, and guns from Shawn Bacon, who the CI knew lived in the upstairs apartment of the High Street residence. CI 2196 indicated that Bacon had numerous guns, large amounts of drugs, and possibly bombs in the apartment. Detective Wise and CI 2196 made arrangements for the acquaintance to bring CI 2196 to the residence to purchase $100 worth of cocaine.

CI 2196 was searched and found to have no contraband. He was fitted with an electronic transmitting device and given $100 of previously photocopied money. Shortly thereafter, Detective Wise and CI 2196 made contact with the acquaintance to advise that they would be coming to his house so the acquaintance could take CI 2196 to go purchase cocaine. When Detective Wise and CI 2196 arrived at the residence, CI 2196 contacted the acquaintance to come out and meet by the acquaintance's car so they could drive to get the cocaine.

Less than ten minutes later, Detective Wise observed the acquaintance exit the rear of the apartment and go to a blue Impala that he and CI 2196 both entered. They began driving to the High Street residence with surveillance units following. Once there, CI 2196 handed the money to his passenger, stating he could keep $20.00 for his services. Detective Chambers observed the acquaintance exit the car and walk to the entrance of the upstairs apartment and go inside.

About fifteen minutes later, the acquaintance exited the apartment door and walked back to the vehicle where he handed CI 2196 a plastic baggie. He explained that Bacon weighed it to be about 1.5 grams. The acquaintance also stated that Bacon had numerous weapons inside the

---

[1] In the copy of the affidavit provided to the Court, and to counsel for the Defendant, the name of the person who CI 2196 knew could purchase drugs from Bacon is redacted. The judge who issued the search warrant would have been provided with a nonredacted version of the affidavit. For purposes of the Defendant's Motion to Suppress, the name of the individual is not important.

residence and all over the apartment. CI 2196 and his acquaintance drove back to Wells Street, where CI 2196 asked to be dropped off at the gas station near the corner of Spring and Wells Streets. When CI 2196 was let out of the vehicle, he walked directly around the gas station building to Detective Wise's vehicle. CI 2196 immediately handed Detective Wise the suspected cocaine, which a later performed test revealed was positive for cocaine with a gross weight of 1.7 grams.

CI 2196 and Detective Wise then returned to the Fort Wayne Vice and Narcotics office. Once there, a search of CI 2196 revealed no contraband. Additionally, CI 2196 identified the acquaintance from a photograph array as the person who took him to Shawn Bacon's residence and obtained the crack cocaine for him. He recounted the acquaintance's description of the firearms, knives, and homemade bombs located throughout the apartment.

On December 7, 2017, Detective Wise met with a different CI, identified in the affidavit as CI 2198. Detective Wise knew CI 2198 to be reliable and credible from his independent verification of information CI 2198 provided in the investigation, as well as in other ongoing investigations. CI 2198 stated that she had made arrangements to purchase $200 of cocaine. As with the other controlled buy, CI 2198 was searched, outfitted with a recording device, and provided money. Several individuals were involved in the events leading up to this controlled buy.[2] An undercover agent accompanied CI 2198 as they waited to make a drug purchase from a third individual (who the Court will refer to as the Seller). At the same time, Detective Wise observed that a fourth person appeared to be waiting for the arrival of the Seller. As soon as the

---

[2] As with the acquaintance's identity, these names of these individuals are redacted in the copy of the affidavit provided to this Court.

Seller arrived, CI 2198 and the undercover agent, as well as the fourth person, approached the Seller. After a brief exchange, the fourth person went into the garage area. CI 2198 and the undercover agent then handed the Seller the $200. The Seller explained that he had to go a couple houses down to get the drugs, but first needed to use the restroom in his own house. While he was still inside, CI 2198 called and relayed that her companion (the undercover agent) also wanted to buy some meth. When the Seller came back outside, he discussed the order with the CI and the undercover agent, and was given an additional $60.00. Surveillance officers watched the Seller walk down a nearby alley toward Bacon's High Street residence and enter his front door.

About seven minutes later, the Seller left the High Street residence. At all times when he was not inside the residence, he was either observed by surveillance or the CI and undercover agent. The Seller walked back toward the car, and motioned CI 2198 to come inside the Seller's residence. CI 2198 observed the Seller break up and weigh the cocaine, before placing it in a plastic baggie that he handed to the CI. The Seller also handed CI 2198 a baggie of methamphetamine. CI 2198 exited the residence and returned to the car where he handed the undercover agent the suspected drugs. These were later tested and weighed, confirming that they were drugs.

This same CI later informed officers that he found out that the Seller was getting his drugs from a man named Shawn, who was know to have numerous firearms, knives, and bombs. The CI explained that Shawn had implied to the Seller that if the police came to his residence, he would throw a bomb down the stairwell. Detective Wise's surveillance of the High Street residence revealed that security cameras were attached to the exterior of the residence and the

unattached garage.

**ANALYSIS**

**A.    Probable Cause**

When an "affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (quoting *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238–39 (quotation marks, brackets, and ellipsis omitted).

The "central teaching of [Supreme Court] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). For this reason,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will

6

be found in a particular place.

*Gates*, 462 U.S. at 238.

"In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997). For example, in issuing a warrant, a judge may infer that evidence of drug dealing is likely to be found where a dealer lives. *Id.* "Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (finding that a controlled buy was adequate to support probable cause where the confidential informant entered the building without contraband, exited moments later, and produced cocaine).

Considering the above standard, the Court finds, based on the totality of circumstances, that the magistrate judge had a substantial basis for concluding that the affidavit set forth sufficient evidence to induce a reasonably prudent person to believe that a search of the High Street residence would uncover evidence of crimes related to distribution of crack cocaine and other drugs. The information from the tipsters, and the trail of evidence from the two controlled drug buys led directly to the High Street residence. The Defendant disputes this assertion, based mostly on the fact that the CI's obtained much of their information, as well as the drugs, from third parties whose credibility had not been vetted. The Court finds that it was not so much the credibility of these individuals that provided the basis for probable cause, as it was their actions in obtaining drugs from the High Street residence.

Whether it was the Defendant, or someone else inside the house who handed these

7

individuals the drugs, the circumstances indicated the probable, if not likely, presence of illegal drugs in that particular house. Although evidence linked the Defendant to the High Street residence, the building was the focus of the search warrant. *See United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018) (noting that the subject of a search warrant is "a location, not a person"). As long as the affidavit created a "fair probability that *a* drug dealer lived at the house," there was probable cause to believe the house would "contain[] evidence of crime." *See id.*

Neither the acquaintance who obtained the crack cocaine for the first CI, nor the Seller who retrieved the drugs for the second CI, were cooperating with law enforcement. They were not aware that their words and actions were the subject of police surveillance. Yet they both entered the High Street residence between the time they accepted payment for the drugs and delivered them to the CIs. The Defendant is correct that neither of the CIs actually entered the High Street residence, so they could not directly confirm that it was the Defendant who provided the drugs. But the CIs were told it was the Defendant who supplied the drugs, and this information came directly from persons who did enter the residence.

The buyer during the first buy specifically stated that Bacon had weighed the drugs, and commented on the numerous weapons inside the residence. He was relaying his first hand observations, which he did not know were being transmitted to law enforcement. Although the interjection of a middle man into the transaction made for less control in the sense that police were not able to hear what occurred inside the High Street residence, it provided a higher degree of reliability because the middle man had no reason to lie to garner favor with law enforcement

8

or to target a rival dealer.[3]

While it is theoretically possible, as the Defendant suggests, that the third party middle men obtained the crack cocaine and methamphetamine from a source not inside the High Street residence, it is not likely. Moreover, theoretical possibility "does not negate the existence of probable cause." *Sidwell*, 440 F.3d at 869 (citing *United States v. Garcia*, 983 F.2d 1160, 1167 (1st Cir. 1993) (rejecting the defendant's contention that "the informant [who made the controlled buy] might have stashed cocaine elsewhere in the building out of the sight of the detective" as "strain[ing] credulity on a common-sense reading")). Again, "probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty," *id.* (citation omitted), and "even when innocent explanations exist for individual factors taken separately, reasonable suspicion may arise when the factors are considered together," *United States v. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007). The Court now turns to the assertion, mentioned earlier, that is the predicate for much of the Defendant's argument that the affidavit did not establish probable cause. He contends that, because Detective Wise did not indicate in his affidavit that the acquaintance and the Seller involved in the controlled buys were unaware that the transactions were controlled buys, this remains unknown. He then proceeds to assume that they knew they were being observed by law enforcement. With this assumption as the backdrop, the Defendant criticizes Detective Wise for failing to search these third parties prior to the drug transaction. (Def.'s Reply 5, 10, ECF No. 41.) He argues that they "could have had drugs with them all along" (*id.* at

---

[3] The Defendant would dispute this finding, and many others the Court makes here and that the judge who issued the warrant likely made when reading of the affidavit, by taking the position that these middle men knew they were taking part in controlled drug buys. The Court will explain later in this Opinion and Order why the position has no merit.

9), and "may have made the whole story up" out of hatred for the Defendant (*id.* at 4). Even though they walked up to the front door of the Defendant's residence and entered it, this door "presumably led to a stairway that went to the apartment" (*id.* at 4–5) and "[t]hey could have entered the door, closed it behind them and never proceeded upstairs to Bacon's apartment" (*id.* at 11). Responding to the Government's argument that the third parties had no reason to go to the Defendant's house to obtain drugs from the Defendant if they had their own to sell, the Defendant argues that "[t]he third parties had a very strong motivation to go to Bacon's house. They had the chance to sell their own drugs without getting arrested for them and at the same time set up Bacon as the 'fall guy' for their own misdeeds." (*Id.* at 10.)

For this last claim, the Defendant does not explain how the misdeed of selling drugs is not grounds for an arrest simply because those drugs were sourced from somewhere else. There is no "one fall guy rule" in drug investigations and prosecutions. Every common sense indication from the affidavit is that the acquaintance from the first controlled buy and the Seller from the second controlled buy engaged in their illegal activity unaware that it was part of a controlled buy targeting their supplier. That is precisely why, as the Defendants point out, these individuals were not subject to a search by law enforcement. It is also why Detective Wise did not declare that the FWPD had a basis to believe these individuals were credible and reliable—they were not the informants. The Defendant's arguments are met straight on by the Supreme Court's admonition that when the underlying circumstances upon which the affiant's belief that probable cause exists "are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States*

*v. Ventresca*, 380 U.S. 102, 109 (1965).

Detective Wise did not simply take the word of two tipsters that the Defendant was dealing drugs from his residence. He confirmed, through personal observation and official records, that the Defendant drove the vehicles one of the tipsters described, and that he lived at the High Street address. Working with informants of know reliability, he arranged for and supervised controlled purchases of drugs. Two separate informants, during two separate transactions, obtained drugs from people who had entered the High Street residence for that very purpose, unaware that police were observing their actions. The affidavit provided the issuing judge with a "substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Alijabari*, 626 F.3d 940, 944 (7th Cir. 2010) (citing *United States v. Dismuke*, 593 F.3d 582, 586 (7th Cir. 2010)).

B.   **Good Faith Exception**

In response to the Defendant's Motion to Suppress, the Government presents the alternative argument that even if the Court were to believe that probable cause was lacking, the good faith exception would apply to the search. Because the warrant was supported by probable cause, the Court does not need to address the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984). *See United States v. Farmer*, 543 F.3d 363, 378 (7th Cir. 2008).

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant's Motion to Suppress [ECF No. 29]. The final pretrial conference and trial dates will be set by separate entry.

SO ORDERED on September 19, 2018.

                                      s/ Theresa L. Springmann
                                      CHIEF JUDGE THERESA L. SPRINGMANN
                                      UNITED STATES DISTRICT COURT