UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Cause No. 1:18-CR-1-HAB |
| | ) |
| SHAWN BACON | ) |

**OPINION AND ORDER**

Defendant was found guilty following a jury trial of eight counts alleging drug and firearm offenses. He received a sentence of 720 months' imprisonment. His convictions and sentence were affirmed on appeal. *United States v. Bacon*, 991 F.3d 835 (7th Cir. 2021). Defendant now moves for relief under 28 U.S.C. § 2255 (ECF No. 186), alleging five instances of what he believes to have been ineffective assistance of counsel. Because the Court finds that Defendant received the quality of representation guaranteed by the Constitution, his motion will be denied.

**I.      Factual and Procedural Background**

**A.      *The Crime of Conviction***

In December 2017, officers executed a search warrant on Defendant's Fort Wayne apartment. During the search, officers discovered a trove of illegal items, including:

- a Bubba Keg filled with black powder and bullets;
- a galvanized steel pipe containing black powder and bullets;
- seven rifles;
- nine handguns;
- four shotguns;
- a short-barreled rifle;
- a bullet proof vest;

- ammunition of various calibers;
- large amounts of methamphetamine, cocaine, and fentanyl; and
- drug paraphernalia.

The firearms, ammunition, and bullet proof vest were illegal for Defendant to own because he had a twenty-year history of felony convictions.

Defendant was arrested later that day following a police stop of his vehicle. During a resulting search of Defendant and his vehicle, officers found two more handguns, two short-barreled rifles, ammunition, and methamphetamine.

**B** *Procedural History*

Defendant was indicted on eight counts: two counts of possession of controlled substances with intent to distribute in violation of 21 U.S.C. § 841; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); possessing body armor after having previously been convicted of a crime of violence, in violation of 18 U.S.C. § 931(a)(1); possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d); two counts of possession of a firearm during and in relation to a firearm, in violation of 18 U.S.C. § 924(c); and maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1). Federal Defender Thomas O'Malley ("O'Malley") was appointed to represent Defendant.

In April 2019, Defendant filed a motion for a *Franks* hearing. That motion was denied two months later.

Defendant proceeded to trial in August 2019. A jury found Defendant guilty on all counts following a four-day jury trial. After the preparation of a pretrial investigation report, Defendant

objected to being sentenced on both § 924(c) counts. The objection was sustained, and Defendant's conviction on Count 7s[1] was vacated.

Defendant was sentenced in March 2020. He was sentenced to 720 months' imprisonment, representing 360 months on Count 1s; 360 months on Count 2s to run concurrent to Count 1s; 360 months on Count 3s to run concurrent to Counts 1s and 2s; 36 months on Count 4s to run concurrent to Counts 1s, 2s and 3s; 120 months on Count 5s to run concurrent to Counts 1s, 2s and 3s and 4s; 360 months on Count 6s to run consecutive to Counts 1s, 2s, 3s, 4s, 5s and 8s; and 240 months on Count 8s to run concurrent to Counts 1s, 2s, 3s, 4s, and 5s.

Defendant timely appealed his conviction and sentence. The Seventh Circuit affirmed both in April 2021. Defendant filed his § 2255 motion in April of this year.

**B.      Legal Discussion**

**1.      *28 U.S.C. § 2255***

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a motion pursuant to § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law, or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id.*; *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255

---

[1] An "s" appears after each count in the record because of a superseding indictment.

> petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313; *see also McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after proving that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). This general rule does not apply to claims of ineffective assistance of counsel, which may be brought via § 2255 even if not pursued during a direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Defendant's motion, like many, relies on a claim of ineffective assistance of counsel in seeking relief. The Sixth Amendment guarantees criminal defendants "the right ... to have the Assistance of Counsel for [their] defence." The right to counsel includes "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 687–688, and (2) that any such deficiency was "prejudicial to the defense," *id*., at 692.

**2.**     *O'Malley was not Ineffective in his Defense of Count 5*

As his third ground for relief, Defendant argues that O'Malley was ineffective in two respects in the defense of Count 5. First, he argues that O'Malley should have introduced online videos posted by Defendant showing Defendant blowing up stuff for the purpose of "entertaining himself as well as viewers on social media." (ECF No. 187 at 3). This, Defendant claims, would have shown that he lacked the criminal intent required to violate 26 U.S.C. §§ 5841 and 5861(d).

Defendant misunderstands the scienter requirement. The Seventh Circuit has made the analysis in cases like this plain: "When the device is inherently susceptible only to a use that makes it a destructive device, no further inquiry is necessary; the subsection proscribes its possession. When the defendant possesses parts susceptible to both a destructive and constructive use, however, further inquiry is necessary in order to ensure that the individual who uses such material to achieve a good social or commercial purpose is not subject to criminal liability." *United States v. Johnson*, 152 F.3d 618, 624 (7th Cir. 1998). Defendant did not have "parts" susceptible to both a destructive and constructive use. He had fully assembled pipe and keg bombs. His intent in possessing those items, just as it would be with possession of a Molotov cocktail, was irrelevant. *United States v. Posnjak*, 457 F.2d 1110, 1119 (2d Cir. 1972) ("When it is clear that the assembled device created by combining the components falls within [28 U.S.C. § 5845(f)](1) or (2), intent is irrelevant."). O'Malley could not have rendered unconstitutionally deficient representation for failing to introduce irrelevant evidence. *United States v. Jones*, 208 F. Supp. 2d 929, 934-35 (N.D. Ill. 2002).

Second, Defendant argues that O'Malley should have hired experts to weigh the amount of flash powder inside the keg and pipe bombs to determine if there was enough powder to make the devices explode. This argument is a non-starter. "By itself, however, the absence of a defense expert is not sufficient to establish that counsel's performance was deficient. For counsel's performance to be found deficient, the defendant must demonstrate that an expert capable of supporting the defense was reasonably available at the time of trial." *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010). Additionally, a defendant complaining about the lack of expert testimony must "show that the evidence was available and that it would have been helpful to the defense." *Ruhl v. Hardy*, 743 F.3d 1083, 1097 (7th Cir. 2014).

5

Defendant has failed in both tasks. Not only has Defendant failed to identify an expert that would have testified on his behalf, but he does not even tell the Court what such an expert would say. That is because Defendant doesn't know what the expert testing he wants done, weighing the powder in the homemade bombs, would show. (ECF No. 187 at 7) (Defendant "would like to get the weight of the powder in these devices to see if they are consistent with" the amount needed to make a bomb). Instead, Defendant would have the Court declare O'Malley ineffective on Defendant's speculation alone. This is not the law, so Defendant cannot prevail on this ground.

**3.    *O'Malley did not Render Ineffective Assistance of Counsel in his Defense of Count 6***

Next, Defendant attacks his § 924(c) conviction related to the bombs. While most of his brief attacks the jury verdict, an attack rejected by the Seventh Circuit, he does include a passing reference at the end to a critique of O'Malley. In essence, Defendant faults O'Malley for "never provid[ing]" the jury with an argument that the bombs were unrelated to his drug operation.

Defendant's argument misstates the record. O'Malley, in fact, argued forcefully that the evidence could not prove the § 924(c) charge in his closing argument. To wit:

> I asked several witnesses when that bomb or whether that bomb had, let's say, a trip wire as he went into the house, like they used to use overseas -- different era. If you hit the trip wire, it would set off the clay (Indiscernible) and all that. Nope, no trip wire in that house.
>
> I said okay, if it doesn't have a trip wire to do it, does it have any kind of a remote device to set it off? He said, "No. No remote device can set it off." So how can you set off the bomb? How can you set it off? He said, "You have to light it." Well, Shawn Bacon sure can't light that bomb when he's not there, can he? And he wasn't there December 20th, and he wasn't there the day before.
>
> And if you believe Ms. Turkette -- and I'll get to her in a few minutes -- if you believe her, he was there on the 17th. He certainly wasn't in the closet, because she left that weapon in the room with the computer screens and stuff.
>
> So to keep on going, nobody knows when the drugs that are here got put into that blue cooler. Nobody knows when the bombs got put into the closet. So how can the government say those bombs are protecting the drugs?

Shawn Bacon can't fire off those bombs when he's out in his car. And we don't know when the last time he was there. There's many reasons why not to believe Miss Turkette on the dates, but we'll get to those.

Detective Wise said he drove by during the week. Well, he never was in the house during the week. So we don't know if the bombs were there during the week. We don't know if the drugs were there during the week. Miss Turkette doesn't know if the drugs were there during the week, or the bombs were there during the time. She denied seeing any drugs there. She denied see any bombs there.

So how can we say beyond a reasonable doubt that Shawn Bacon ever could have protected the drugs or with the bombs? How did they intertwine? How was there any interplay between the two? We don't have a single bit of evidence. The government wants you to make an assumption. But you can't do that. It's got to be beyond a reasonable doubt.

Furthermore, why would anybody attempt to protect those drugs with the bomb? The bomb's going to blow up the drugs. That's one. Number 2, think of the kind of absurdity. Someone is coming into the house to do a drug raid. So Shawn Bacon then has to get up out of the kitchen, or assuming he's in the kitchen or whatever room he's in, he's got to go through a locked hasp with a key, which we don't know if any of the keys on his key ring fit the hasp or the lock on the hasp. We don't know that.

The government again, brings it up, oh, there's keys on this key ring that go to a padlock. They don't know which keys go to a padlock here. But if they do, how do they know which padlock? Nobody tested it. And there's 2 padlocks you have to go through. So what are we going to do? Guess that he had a key to the padlock, is that beyond a reasonable doubt? And guess that he had the key to the second padlock and after he goes through the first padlock, the second padlock, he's then got to find the bombs that don't explode and light them off. And what, he's going to throw it at the invaders? Come on. Is that beyond a reasonable doubt?

The government will often say use your common sense. Use your common sense. Does that protect the drugs? Finally, just one more thing we ought to look at before we decide whether the bombs don't explode could be let off. We've got all of this stuff. I mean they went through that house tooth and nail, overturned everything, they went through his car, they took his keys, they took his money -- there was like $800 on his person. They went through every single thing in the house. One thing we don't have: We don't have a single match or a lighter. Nobody bothered to pick them up. The only way you can light those is by actually lighting the fuse. Shawn Bacon doesn't have any matches on his person, any matches found in the kitchen, any matches found in the house, any one of those little Bic lighter things that you light – nothing there. So how could he have lit them up anyway, even if they did

7

explode, which 2 experts say they might not. And actually one says she doesn't know at all.

And even if they were present when the drugs were there, which we're not sure of, even if all that was true, and even if he could possibly get to them by going through 2 locks, which he doesn't have the keys to or we wouldn't have known it, even if he could do all that, we haven't put a single flammable item in his hand. So when it comes to finding a explosive device, I'm going to ask you to find there is no explosive device present. They weren't protecting the drugs.

(ECF No. 182 at 30-33). Defendant's problem isn't that O'Malley didn't make the argument. His problem is that the jury didn't buy it. But simply failing to secure an acquittal does not make an attorney constitutionally ineffective. Relief on this ground must be denied.

4. ***O'Malley was not Ineffective in Failing to Determine the Identity of the CI's***

The Seventh Circuit described the investigation here as follows:

To further corroborate the tips, officers arranged a controlled buy. They first enlisted a confidential informant who had proven credible and reliable in past cases. The informant, in turn, reached out to an acquaintance who said he could buy cocaine, heroin, meth, and guns from Bacon. Before the buy, officers searched and wired the informant. The officers then drove with the informant to the acquaintance's house. From there, the informant and the acquaintance drove together to Bacon's apartment. Surveillance units followed separately. When they arrived at Bacon's apartment, the informant gave the acquaintance $100 to buy cocaine and told him to keep $20 for his trouble. Officers then observed the acquaintance enter the upstairs apartment. He exited 18 minutes later, got back into the car with the informant, and handed the informant the cocaine, explaining that Bacon had weighed it out at 1.5 grams. The acquaintance also told the informant that Bacon had weapons all over his apartment. (The officers heard these conversations because the informant was wearing a wire.) After parting ways with the acquaintance, the informant met the officers and gave them the cocaine. The officers again searched the informant and found no contraband.

A few weeks later, officers conducted a second controlled buy. They enlisted a different confidential informant who had also proven credible and reliable in past cases. The informant arranged to buy drugs from an acquaintance who lived down the street from Bacon. Before the buy, officers searched and wired the informant. The officers then drove with the informant to the acquaintance's house. Once there, the informant gave the acquaintance $260 to buy cocaine and meth. The acquaintance took the money and walked toward Bacon's apartment. A surveilling officer saw the acquaintance enter Bacon's apartment and exit 17 minutes later, heading back toward his own house. When the acquaintance got home, he motioned for the informant to come inside. Once inside, the acquaintance weighed and

8

> bagged the cocaine and then gave the informant the cocaine along with a separate bag of meth. (Again, the officers heard this exchange because the informant was wearing a wire.) The informant left the acquaintance's house, got back into the officers' car, and handed them the drugs. After the buy, the informant told the officers that the acquaintance had purchased drugs from someone named "Shawn" who had numerous weapons in his apartment.

*United States v. Bacon*, 991 F.3d 835, 838-39 (7th Cir. 2021). Defendant asserts that O'Malley was ineffective for failing to determine the identities of the informants "because even the slight possibility that these" informants had ulterior motives would have affected the probable cause determination. (ECF No. 187 at 12).

This argument fails because, as Defendant has been repeatedly told, the informants' identities played little, if any, part in the probable cause determination. Discussing probable cause, the Seventh Circuit noted that,

> Officers received two anonymous tips, close together in time, that Bacon was selling drugs from his home. The officers corroborated the tipsters' information as to Bacon's cars, address, and criminal record. They then conducted two controlled buys from Bacon's residence. The middlemen who entered Bacon's apartment not only acquired drugs; they also told the informants that Bacon, a convicted felon, had weapons all over his apartment. On these facts, the state-court judge had a substantial basis for concluding that there was a "fair probability" that officers would find evidence of illegal drug dealing activities at 1728 ½ High Street—even if the officers never saw Bacon himself selling drugs.

*Bacon*, 991 F.3d at 841 (citations omitted). Absent from this discussion is any discussion of the acts or credibility of the informants. This is because, even assuming Defendant's argument that the informants were out to get him, law enforcement still had two corroborated tips and two controlled buys conducted by third parties. This information was enough to obtain a warrant, regardless of the credibility of the informants. *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) ("Controlled buys add great weight to an informant's tip.").

Because the identities and motives of the informants were irrelevant, they could not have affected either the probable cause or *Franks* hearing determinations. *See Bacon*, 991 F.3d at 839-

9

42. And, as noted above, O'Malley cannot be found to have rendered ineffective assistance for failing to present irrelevant evidence. *Jones*, 208 F. Supp. 2d at 934-35. Defendant has no right to relief on this ground.

5.   ***Defendant's* Rehaif *Arguments, While Potentially Meritorious, Need not be Considered***

Finally, Defendant argues that O'Malley was ineffective for failing to attack the knowledge requirements of Counts 3 and 4 (possession of a firearm and body armor by a prohibited person) established in *Rehaif v. United States*, 139 S.Ct. 2191 (2019). Defendant claims that he was told by Allen County, Indiana, Superior Court Judge Wendy Davis that his prior state law felony convictions had been "cleared" because of his completion of an alternative sentencing program. Thus, he claims, he did not know he was a prohibited person and thus could not have violated 18 U.S.C. § 922(g).

As the Government rightly argues, "courts are free to pretermit decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects." *Ryan v. United States*, 688 F.3d 845, 849 (7th Cir. 2012). Even if the Court were to vacate Defendant's convictions for Counts 3 and 4, his sentence would remain the same through the convictions and sentences for Counts 1 and 2. Any discussion on collateral review of these counts, then, would "smack of an advisory opinion," *id.*, something this Court cannot render. The Court, then, declines to address the *Rehaif* arguments.

### III.   Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section

2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Because the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, no certificate of appealability will be issued.

**IV.   Conclusion**

For these reasons, Defendant's § 2255 motion (ECF No. 186) is DENIED and no certificate of appealability will issue.

SO ORDERED on October 12, 2022.

        s/ Holly A. Brady
        JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT